OPINION OF THE COURT
David I. Schmidt, J.
In this action to recover damages for personal injuries, defendants move in separate motions (motion sequence Nos. 1 and 2) for an order pursuant to CPLR 3212, for summary judgment dismissing plaintiffs’ complaint as against them in its entirety, on the ground that they bear no liability for the occurrence of the subject incident. Plaintiffs oppose.
Background
This is an action to recover damages for injuries sustained by plaintiff Maryann Cappellino when two dogs, a dog owned by defendants Nick Bedell and his wife Laurie Gaughran (Bedells and Bedell dog), and a dog owned by defendants Adena Kalet and her husband Mark Schwartz (Schwartzes and Schwartz dog), allegedly hit her from behind, as she was standing and conversing with the Bedells, Adena Kalet, and others, in a common area field of her summer bungalow colony, the Lake Huntington Summer Community cooperative in the Catskills. The dogs had been chasing each other around the field prior to the accident but Maryann testifies that she was not aware of the dogs’ presence in the field at any time, before or after she fell, and was allegedly informed after the accident by the dogs’ owners that the dogs had caused her fall. Defendants dispute Maryann’s claim that she was hit from behind and instead claim that the Bedell dog sat suddenly behind Maryann and that she stepped backward and tripped over the dog. The Bedells, the Schwartzes, and Maryann all own bungalows in the cooperative and are neighbors.
Plaintiffs allege a cause of action based on common-law negligence claiming that defendants were negligent (i) in permitting their dogs to run and chase each other off leash, (ii) in failing to issue commands to the dogs so as to avoid collision with *488 Maryann, and (iii) in failing to warn Maryann of the impending collision. Plaintiffs further allege a cause of action based on strict liability claiming that defendants were on notice that their dogs had a propensity to run and chase each other in the field in front of their bungalows and that they should have been aware that the dogs would knock someone down while running wild. Plaintiffs also allege a cause of action based on defendants' status as owners in the cooperative and assert that defendants were obligated to maintain the property in a reasonably safe condition and failed to do so.
Defendants' Motions for Summary Judgment
The Bedell and Schwartz defendants move in separate motions for an order pursuant to CPLR 3212, for summary judgment, dismissing all claims against them, on the ground that no liability for the occurrence of the subject incident can be attributed to them. In support of their motions, defendants argue that plaintiffs cannot assert common-law negligence claims against them to recover damages for injuries caused by their dogs since New York case law does not recognize a common-law negligence cause of action to recover damages for injuries caused by a domestic animal. Defendants further argue that they are not liable under strict liability since there is no evidence that the dogs ever hurt anyone prior to the subject incident or had vicious propensities and that defendants had no reason to suspect that their dogs were likely to inflict harm.
Discussion
I. Whether a Common-Law Negligence Claim is Available to Plaintiffs in Order to Recover Damages for Injuries Caused by Defendants' Dogs
The Court of Appeals in Collier v Zambito established that “the owner of a domestic animal who either knows or should have known of that animal’s vicious propensities will be held liable for the harm the animal causes as a result of those propensities.” (1 NY3d 444, 446-447 [2004].) The Court of Appeals, in subsequent decisions, further ruled that “when harm is caused by a domestic animal, its owner’s liability is determined solely by application of the rule articulated in Collier” (Bard v Jahnke, 6 NY3d 592, 599 [2006] [emphasis added])— “i.e., the rule of strict liability for harm caused by a domestic animal whose owner knows or should have known of the animal’s vicious propensities.” (Petrone v Fernandez, 12 NY3d *489 546, 550 [2009].) “[I]n other words, there is no such thing as negligence liability where harm done by domestic animals is concerned.” (Id.)
The Court of Appeals’ decision to eliminate a cause of action in common-law negligence in cases arising out of an injury caused by a domestic animal, and instead to only allow an animal owner to be found liable for his or her animal’s conduct where the owner was aware of the animal’s “vicious propensity” prior to the animal causing harm, reflects the notion that domestic animals, in their normal condition, are not harmful and that animal owners are under no duty to guard against anomalous occurrences unless they were on notice that their animals were in fact anomalous and prone to causing harm. Thus, the “vicious propensity” rule was crafted as a limit to the generally accepted assumption that domestic animals are harmless and that their owners are under no duty to protect the public from them, and was intended to cover atypical animals that have a tendency to cause harm and to charge such animals’ owners, under strict liability, with an absolute duty to safeguard the public from their unusual animals.
However, in 2013, in a departure from the “vicious propensity—strict liability” framework discussed above, the Court of Appeals permitted a lawsuit to proceed on a theory of common-law negligence where a farmer allowed a cow to wander off his property and the cow collided with a motorist on a public road. (See Hastings v Sauve, 21 NY3d 122, 125-126 [2013].)
The Court distinguished the circumstances in Hastings from the general rule established in Bard and its progeny as follows:
“In Bard, we denied recovery to a plaintiff who was attacked by a bull while working in the barn where the bull was kept. Noting that the bull ‘had never attacked any farm animal or human being before,’ we declined to ‘dilute our traditional rule’ that a plaintiff in such a case must show that defendant had knowledge of the animal’s ‘vicious propensities’ (6 NY3d at 597-599). We made clear that by ‘vicious propensities’ we meant any behavior that ‘reflects a proclivity to act in a way that puts others at risk of harm’ (id. at 597, quoting Collier v Zambito, 1 NY3d 444, 447 [2004]). We have followed Bard in two more recent cases involving plaintiffs who were attacked or threatened by dogs (Petrone v Fernandez, 12 NY3d 546 [2009]; Bernstein v Penny Whistle Toys, Inc., 10 NY3d 787 [2008]).
*490 “This case, unlike Collier, Bard, Bernstein and Petrone, does not involve aggressive or threatening behavior by any animal. The claim here is fundamentally distinct from the claim made in Bard and similar cases: It is that a farm animal was permitted to wander off the property where it was kept through the negligence of the owner of the property and the owner of the animal. To apply the rule of Bard—that ‘when harm is caused by a domestic animal, its owner’s liability is determined solely’ by the vicious propensity rule (6 NY3d at 599)—in a case like this would be to immunize defendants who take little or no care to keep their livestock out of the roadway or off of other people’s property.
“We therefore hold that a landowner or the owner of an animal may be liable under ordinary tort-law principles when a farm animal—i.e., a domestic animal as that term is defined in Agriculture and Markets Law § 108 (7)—is negligently allowed to stray from the property on which the animal is kept. We do not consider whether the same rule applies to dogs, cats or other household pets; that question must await a different case.” (Hastings v Sauve, 21 NY3d 122, 125-126 [2013].)
Based on the Court of Appeals’ decision in Hastings to refrain from considering until a later case whether ordinary tort-law principles may be applied to find dog, cat or other household pet owners liable when their animals cause harm, defendants argue that the Hastings rule applies exclusively in instances where a farm animal is negligently allowed to stray from the property on which it is kept and that, under the current state of the law, dog owners cannot be found liable absent prior notice that their animals possess a vicious propensity.
However, this court interprets the Court of Appeals’ ruling in Hastings differently and reads the rule as broadly applicable and intending to cover incidents of obvious animal owner negligence that would otherwise go unguarded against under Bard’s vicious propensity—strict liability scheme of liability. The language in Hastings clearly sets forth the Court of Appeals’ agenda regarding animal owner liability:
“To apply the rule of Bard—that when harm is caused by a domestic animal, its owner’s liability is determined solely by the vicious propensity rule—in a case like this would be to immunize defendants *491 who take little or no care to keep their livestock out of the roadway or off of other people’s property.” (Id. at 125-126 [internal quotation marks and citation omitted].)
Thus, the Hastings decision, in allowing plaintiffs to recover against animal owners under common-law negligence principles, acts as a qualification to the previously absolute rule that domestic animals are harmless as a matter of law and that their owners are under no duty to protect the public from them absent prior notice of vicious propensity. Simply stated, the Court of Appeals’ decision, in allowing the Hastings plaintiff to recover under tort principles, was in recognition of the fact that the farmer was obviously negligent in allowing his cow to range freely in roadways but yet would not be liable under a Bard vicious propensity analysis.
The rule articulated in Hastings is equally applicable, as a matter of logic, to any circumstance where “[t]o apply the rule of Bard . . . would be to immunize defendants who take little or no care” to protect others from obvious harms. The Court of Appeals’ hesitancy in extending the rule to dogs, cats or other household pets does not mean that where a dog owner leaves a dog to play near a storage depot of liquid nitroglycerin, and through contact with the chemicals the dog sets off a great explosion, a plaintiff will need to show that the dog had a vicious propensity or a proclivity for setting off explosions. In such an obvious and extreme case of owner neglect, courts should readily apply the rule in Hastings to a dog owner. However, because dogs are generally benign and do not cause harm, even when allowed free-range, the Court of Appeals has yet to identify the exact case where an animal owner is so negligent as to bypass the vicious propensity rule and become liable under common-law negligence. However, when the case does ultimately present itself, the Hastings doctrine is readily available.
Nevertheless, in the case at bar, the court finds that the defendants were not negligent and that this case cannot be the prototype case for applying the Hastings rule to dog owners that negligently supervise their dogs. Although plaintiffs’ accident was terribly unfortunate, defendants acted reasonably and were not negligent in allowing their dogs to roam free in the field in front of their bungalows since dogs, even when allowed to roam freely, do not generally collide into people.
“Pursuant to general principles governing a negligence claim, there must be a duty owed the plaintiff *492 by the defendant and a breach of that duty. In the oft-quoted language of Palsgraf v Long Is. R. R. Co. (248 NY 339, 344 [1928]), ‘[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.’ Thus, liability in negligence arises when a defendant owes a plaintiff a duty of care and is negligent in taking reasonable measures to prevent injury arising from conduct that is reasonably foreseeable.” (Colarusso v Dunne, 286 AD2d 37, 40 [2d Dept 2001] [citations omitted].)
Here, defendants could not anticipate that their dogs would deviate from their normal behavior and collide with Maryann with such calamitous effect. Dogs generally avoid colliding with people of their own accord and defendants had no reason to think that their dogs’ conduct, in running in a field where Maryann and others were standing, necessitated any special intervention on their part. Accordingly, the court finds that, as a matter of law, defendants did not have a duty to protect plaintiffs against the occurrences giving rise to the subject accident and were not negligent in failing to issue commands to their dogs so as to avoid the alleged collision with Maryann or in failing to warn Maryann of an impending collision. In so finding, the court cognizes that the house rules of the cooperative require dogs to be leashed while on cooperative grounds. However, contrary to plaintiffs’ assertions, the house rules do not set the standard of care owed by defendants to plaintiffs and the court finds that the cooperative’s leash rule imposes a higher standard of care on the defendants than that imposed by law and, as such, defendants’ violation of the rule may not be considered in determining whether defendants acted negligently.* (See Conrad v County of Westchester, 259 AD2d 724, 725 [2d Dept 1999] [“Internal rules and manuals are admissible as some evidence of whether reasonable care was exercised only if they do not impose a higher standard of care than that which is imposed by law” (citing Rivera v New York City Tr. Auth., 77 NY2d 322, 329 *493 [1991], Crosland v New York City Tr. Auth., 68 NY2d 165, 168-169 [1986], and Clarke v New York City Tr. Auth., 174 AD2d 268, 275-276 [1st Dept 1992])]; see also generally Clarke v New York City Tr. Auth. at 275 [“While the Court of Appeals has held that internal rules are admissible and may be considered by the jury as evidence of the standard of reasonable care, same are not admissible, when they impose a standard higher than that otherwise set by law. In Lesser v Manhattan & Bronx Surface Tr. Operating Auth. (157 AD2d 352, 356 [1st Dept 1990]), we stated ‘(w)hile internal operating rules may provide some evidence of whether reasonable care has been taken and thus some evidence of the defendant’s negligence or absence thereof, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the area of reasonable care’ ” (citations omitted)]).
Accordingly, defendants’ motion and cross motion for summary judgment are granted with respect to plaintiffs’ cause of action sounding in common-law negligence, as defendants did not have a duty to protect plaintiffs from the unforeseeable occurrences giving rise to the accident. Likewise, defendants’ motion and cross motion for summary judgment are granted with respect to plaintiffs’ cause of action based on defendants’ status as owners in the cooperative as the claim is merely duplicative of their negligence claim and identically lacking.
II. Defendants’ Liability under Strict Liability
As discussed above, “the owner of a domestic animal who either knows or should have known of that animal’s vicious propensities will be held liable for the harm the animal causes as a result of those propensities.” (Collier v Zambito, 1 NY3d 444, 446-447 [2004].)
“[A]n animal that behaves in a manner that would not necessarily be considered dangerous or ferocious, but nevertheless reflects a proclivity to act in a way that puts others at risk of harm, can be found to have vicious propensities—albeit only when such proclivity results in the injury giving rise to the lawsuit.” (Id.)
However, “normal canine behavior is insufficient to establish a vicious propensity.” (See Bloom v Van Lenten, 106 AD3d 1319, 1320 [3d Dept 2013] [internal quotation marks omitted], citing Collier v Zambito, 1 NY3d 444, 446-447 [2004]; see also Dykeman v Heht, 52 AD3d 767, 769 [2d Dept 2008].)
Here, plaintiffs argue that the defendants had permitted their dogs to be off leash in the past, that the defendants were *494 aware that the dogs would run at full speed and that they should have known of the propensity for harm that chasing dogs pose to bystanders. However, contrary to plaintiffs’ assertions, defendants’ knowledge of their dogs’ propensity to run around when left off leash cannot be the basis for strict liability since, as the Court of Appeals in Collier v Zambito observed, “the dog[s’] actions—. . . running around—are consistent with normal canine behavior.” (1 NY3d 444, 447 [2004].) Simply put, “running around [is] what dogs do.” (Id.; see e.g. Bloom v Van Lenten, 106 AD3d 1319 [3d Dept 2013] [holding that where a dog was being chased by other dogs, and it ran into the back of plaintiffs leg, knocking her onto the ground, the dog’s history of running into people in the course of being playfully chased by other dogs did not establish the dog’s vicious propensity, as would support finding its owners strictly liable for plaintiffs injuries, since such conduct was normal canine behavior].)
In view of the foregoing, the motion for summary judgment by Adena Kalet and Mark Schwartz, and the motion for summary judgment by Nick Bedell and Laurie Gaughran, are granted and the complaint is dismissed as against them in its entirety.

 The court is of course aware that many municipalities have leash laws requiring dog owners to leash their dogs in public places and that those laws are similar to the house rule in effect in the cooperative. Nevertheless, the court rejects the argument that an internal house rule mirroring municipal leash laws, which are generally designed for more urban areas, will set the standard of care in the case at bar where the dogs were allowed to run in an open field in a bungalow colony situated in rural upstate New York.