[807 NE2d 254, 775 NYS2d 205]

ANDREA COLLIER, as Parent and Natural Guardian for MATTHEW COLLIER, an Infant, Appellant, v CHARLES ZAMBITO et al., Respondents.

Argued January 8, 2004; decided February 17, 2004

## POINTS OF COUNSEL

*Karpinski, Stapleton, Galbato & Tehan, P.C.,* Auburn (*David G. Tehan* of counsel), for appellant. The Appellate Division erred in ruling that plaintiff failed to raise an issue of fact as to whether defendants knew or should have known of the dog's vicious propensities. (*Cullipher v Traffic Markings,* 259 AD2d 992; *Silliman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Andre v Pomeroy,* 35 NY2d 361; *St. Paul Indus. Park v New York State Urban Dev. Corp.,* 63 AD2d 822; *Robinson v Strong Mem. Hosp.,* 98 AD2d 976; *Plennert v Abel,* 269 AD2d 796; *Smith v Farner,* 229 AD2d 1017; *Rider v White,* 65 NY 54; *GTF Mktg. v Colonial Aluminum Sales,* 66 NY2d 965; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851.)

*Williamson, Clune & Stevens,* Ithaca (*Allan C. VanDeMark* of counsel), for respondents. The Appellate Division, Fourth Judicial Department, correctly ruled that as there was no evidence that defendants' dog had a propensity to bite and as defendants had no knowledge that their dog had vicious propensities, there can be no liability. (*Plennert v Abel,* 269 AD2d 796; *Smith v Farner,* 229 AD2d 1017; *Elmore v Wukovits,* 288 AD2d 875; *Shannon v Schultz,* 259 AD2d 937; *Roupp v Conrad,* 287 AD2d 937; *Wilson v Livingston,* 305 AD2d 585; *Altmann v Emigrant Sav. Bank,* 249 AD2d 67; *Mitura v Roy,* 174 AD2d 1020; *Gill v Welch,* 136 AD2d 940; *Fontanas v Wilson,* 300 AD2d 808.)

## OPINION OF THE COURT

CIPARICK, J.

Defendants Charles and Mary Zambito own Cecil, a beagle-collie-rottweiler mixed breed dog that they keep as a family pet. Defendants customarily confined Cecil to the kitchen area, behind a gate, when they were away from home and when visitors came, because he would bark. On the night of December 31, 1998, 12-year-old Matthew Collier was a guest of the defendants' son, Daniel. He had been to the defendants' home on several previous occasions, and on that evening had been upstairs with Daniel and several other children. When Matthew came downstairs to use the bathroom, the dog began to bark. Mary Zambito placed Cecil on a leash and, when Matthew emerged from the bathroom, invited him to approach to allow the dog to smell him, as the dog knew him from prior visits. As the boy approached, Cecil lunged and bit Matthew's face. There

is no dispute that the dog's attack was unprovoked. The parties testified at their examinations before trial that, to their knowledge, Cecil had never previously threatened or bitten anyone.

At Supreme Court, defendants moved for summary judgment to dismiss plaintiff's complaint for failure to state a cause of action. Specifically, defendants argued that plaintiff did not demonstrate that the dog had vicious propensities or that the defendants knew or should have known of the dog's alleged vicious propensities. Plaintiff cross-moved for summary judgment on the issue of liability. Supreme Court denied both motions, finding that plaintiff established an issue of fact as to whether the defendants knew or should have known of Cecil's alleged vicious propensities. The court held that defendants' implied knowledge of such propensities could be inferred by defendants' confinement of Cecil in the kitchen.

The Appellate Division reversed, on the law, finding that plaintiff failed to raise an issue of fact as to whether the defendants were aware or should have been aware of their dog's alleged vicious propensities (299 AD2d 866 [2002]). The Court further found no evidence that Cecil actually had vicious propensities of the type that resulted in Matthew's injury. Two Justices dissented and would have voted to affirm, finding that plaintiff raised an issue of fact as to "whether defendants knew or should have known of Cecil's dangerous propensities and, if so, whether defendant was negligent in initiating the contact between plaintiff's son and Cecil" (299 AD2d at 868). We now affirm.

## Discussion

For at least 188 years (*see e.g. Vrooman v Lawyer*, 13 Johns 339 [1816]), the law of this state has been that the owner of a domestic animal who either knows or should have known of that animal's vicious propensities will be held liable for the harm the animal causes as a result of those propensities (*see Hosmer v Carney*, 228 NY 73, 75 [1920]; *see also* Restatement [Second] of Torts § 509). Vicious propensities include the "propensity to do any act that might endanger the safety of the persons and property of others in a given situation" (*Dickson v McCoy*, 39 NY 400, 403 [1868]).

Knowledge of vicious propensities may of course be established by proof of prior acts of a similar kind of which the owner had notice (*see Benoit v Troy & Lansingburgh R.R. Co.*, 154 NY 223, 225 [1897]; *see also* 5A-5 Warren, Negligence in New York

Courts § 5.04 [6] [2003]). In addition, a triable issue of fact as to knowledge of a dog's vicious propensities might be raised—even in the absence of proof that the dog had actually bitten someone—by evidence that it had been known to growl, snap or bare its teeth. Also potentially relevant is whether the owner chose to restrain the dog, and the manner in which the dog was restrained (*see Hahnke v Friederich*, 140 NY 224, 226 [1893]; *see also Rider v White*, 65 NY 54, 55-56 [1875]). The keeping of a dog as a guard dog may give rise to an inference that an owner had knowledge of the dog's vicious propensities (*see Hahnke*, 140 NY at 227).

In addition, an animal that behaves in a manner that would not necessarily be considered dangerous or ferocious, but nevertheless reflects a proclivity to act in a way that puts others at risk of harm, can be found to have vicious propensities—albeit only when such proclivity results in the injury giving rise to the lawsuit. But nothing in our case law suggests that the mere fact that a dog was kept enclosed or chained or that a dog previously barked at people is sufficient to raise a triable issue of fact as to whether it had vicious propensities.

The evidence submitted by plaintiff was simply insufficient to raise an issue of fact as to whether Cecil had vicious propensities that were known, or should have been known, to defendants. Cecil was kept as a family pet, not as a guard dog. Although the dog was restricted to the kitchen area, uncontroverted deposition testimony indicated that he was confined only because he would bark when guests were at the house. There was no evidence that Cecil was confined because the owners feared he would do any harm to their visitors.* There was no evidence that the dog's behavior was ever threatening or menacing. Indeed, the dog's actions—barking and running around—are consistent with normal canine behavior. Barking and running around are what dogs do.

The infant plaintiff testified that he had met Cecil on previous occasions and was not afraid of the dog. Although he testified that Cecil was "[v]ery wild" when he had seen the dog on those previous occasions, he later clarified that what he meant was that the dog "[r]uns around a lot, . . . [and has] a lot of energy." The parties were also unaware of any prior incidents

---

* The dissent's suggestion that one could "reasonably conclude that defendants confined Cecil to the kitchen because they were aware of a potential danger" is simply unsupported by the record (dissenting op at 450).

in which the dog had attempted to bite or attack anyone, and defendants had received no previous complaints about the dog's behavior. Plaintiff herself testified that Cecil had always been "friendly." The fact that the owner invited Matthew to approach the dog would seem to demonstrate that she did not conceive of the possibility that the dog would attack the boy.

Finally, plaintiffs are not unduly burdened by the requirement of proof that a defendant know or should know of an animal's vicious propensities. Once such knowledge is established, an owner faces strict liability for the harm the animal causes as a result of those propensities (*see Strunk v Zoltanski*, 62 NY2d 572, 575-576 [1984]). This disposition does not entitle dog owners to an automatic "one free bite." There could certainly be circumstances where, although a dog has not yet bitten a person, its vicious nature is apparent. In that situation, the owner's success in keeping the dog confined or restrained in the past would not insulate the owner from liability. The behavior exhibited by Cecil in this particular case simply does not rise to that level and summary judgment was properly granted dismissing the complaint.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

G.B. SMITH, J. (dissenting). Because a question of fact exists as to whether defendants knew or should have known of the potential of the dog to harm others, I dissent.

Plaintiff Andrea Collier commenced this action against defendants Charles Zambito and Mary Zambito seeking damages for injuries sustained by her 12-year-old son, Matthew, when defendants' dog, a mixed beagle/collie/rottweiler, bit him in the face while he was a guest at their home.

At the examination before trial, Matthew testified that he had visited defendants' home on five or six prior occasions as he was a friend of defendants' son. During those visits Matthew observed that the dog, Cecil, was "[v]ery wild," that he had a lot of energy and that he ran around a lot within the confines of the kitchen, which had a three-foot gate preventing the dog from going to other parts of the house. Cecil had never bitten or threatened Matthew. The one time Matthew's mother saw Cecil, he seemed "very active, running around the house, jumping up on the furniture and down. He seemed friendly."

On the day of the incident, Matthew was one of seven boys who had been invited to the house. As Matthew was passing

through the kitchen after going to the nearby bathroom, he noticed Ms. Zambito standing with the dog. At her request, he extended his hand so that Cecil could smell him, but instead Cecil lunged at him, biting him on the face.

In her deposition, Ms. Zambito testified that she told Matthew that Cecil "knows you, let him smell you." She had opened the kitchen gate and was holding Cecil by a leash when he lunged at Matthew. The family had acquired Cecil seven months earlier when he was a puppy. Around members of the family, Cecil was mild, but when Ms. Zambito arrived home, he would excitedly jump all over her. Around others, Cecil would get excited and bark. But he had not jumped on anyone other than family members because he was confined to the kitchen whenever they had visitors. When Cecil was not inside the house, the Zambitos chained him to a pole in the backyard. Cecil did not interact with other dogs. Ms. Zambito's testimony regarding Cecil's demeanor was echoed by Mr. Zambito and their son Dan.

Supreme Court denied defendants' and plaintiff's respective motions for summary judgment, finding that Cecil's behavior and the practice of confining him "may be sufficient evidence to give rise to implied knowledge of Cecil's propensity for viciousness."

Over the dissent of two Justices, the Appellate Division reversed, concluding that defendants met their burden by testifying that Cecil "had no history of biting or behaving in a threatening manner toward anyone." (299 AD2d 866, 866 [2002].) To the dissent, Cecil engaged in "aggressive and intimidating behavior," which gave rise to an issue of fact. (*Id.* at 867.)

The prevailing view under American common law, as stated by Oliver Wendell Holmes, Jr. in The Common Law, was that "a man is bound at his peril to keep his cattle from trespassing, and he is liable for damage done by his dog or by any fierce animal, if he has notice of a tendency in the brute to do the harm complained of." Expounding on the meaning of viciousness and notice, this Court stated in *Dickson v McCoy* (39 NY 400 [1868]) that

> "[b]y vicious propensity, is included a propensity to do any act that might endanger the safety of the persons and property of others in a given situation. . . . [T]he owner is not liable for permitting his domestic animal to be at large when he has no

reason to apprehend that any injury to others will result therefrom. If he has such reason, he is liable" (*id.* at 403).

In *Rider v White* (65 NY 54 [1875]), the issue of vicious propensity was properly submitted to the jury even though there was no evidence that the dogs ever attacked or injured anyone. There was evidence that the seven large dogs "ran out furiously at passers-by, indicating a disposition to inflict an injury upon them" (*id.* at 56). It was also shown that the owners had posted "beware of dogs" signs, had warned someone to beware, and that one of the dogs was kept in chains a portion of the time.

In *Strunk v Zoltanski* (62 NY2d 572, 574 [1984]), there was an issue of fact as to whether the landlord, who did not live on the premises, could be found liable based on the landlord's observation of a tied-down German Shepherd dog that was " 'barking very loudly, jumping up and down, growling and acting ferocious.' "

It is true that Cecil did not bite or threaten anyone. Reasonable people could conclude that defendants had no notice that Cecil was prone to viciousness. The question then is whether, viewing the evidence in the light most favorable to the plaintiff, any reasonable person could conclude that Cecil had a "propensity to do any act that might endanger the safety" of someone like Matthew. There are good reasons for answering the question in plaintiff's favor.

First, the nature of the attack is itself significant. Unprovoked and with Ms. Zambito beside him, Cecil lunged straight for Matthew's face after barking at him, causing a serious injury (*see Wilson v Livingston*, 305 AD2d 585, 586 [2d Dept 2003]; *Brophy v Columbia County Agric. Socy.*, 116 AD2d 873 [3d Dept 1986]; *Perrotta v Picciano*, 186 App Div 781 [1st Dept 1919]). Cecil was pulled back by Ms. Zambito and put into a nearby room by Mr. Zambito.

Second, the manner in which the Zambitos confined Cecil may reflect an awareness that Cecil posed a threat to visitors. Of course dogs run around and bark. But not all dogs are kept away from visitors simply because they run around and bark. One could reasonably conclude that defendants simply did not want visitors to feel uncomfortable. But one could also reasonably conclude that defendants confined Cecil to the kitchen because they were aware of a potential danger. Plaintiff should be given the benefit of this favorable inference. That Cecil never

actually bit or threatened anyone should not be dispositive. As Ms. Zambito implied, Cecil had never been given the opportunity to do so. But on the one occasion when Ms. Zambito did let Cecil out of the kitchen so that he could smell Matthew, Cecil attacked.

Third, in assessing the level of threat posed by a dog, due consideration must be given to the age of the victim. When a child is involved, a dog's potential danger increases and an owner needs to be more careful. Children are more vulnerable to dog attacks than adults. Here, Ms. Zambito exposed a 12 year old to a dog who was kept away from all visitors and continually barked at the child prior to attacking him. While Ms. Zambito's conduct may have been well-intentioned, a jury could reasonably conclude that it was ill-considered in light of the attendant risk of injury.*

Accordingly, defendants' motion for summary judgment should be denied.

Chief Judge KAYE and Judges GRAFFEO and READ concur with Judge CIPARICK; Judge G.B. SMITH dissents and votes to reverse in a separate opinion in which Judge ROSENBLATT concurs; Judge R.S. SMITH taking no part.

Order affirmed, with costs.

---

* We note that, by contrast, a number of states have statutorily eliminated the requirement that a plaintiff prove that the dog owner knew or should have known of the dog's vicious tendencies. In adopting a strict liability approach, these states decided that dog owners as opposed to wholly innocent victims—here a child—should bear the risks of dog ownership (*see e.g.* Ariz Rev Stat § 11-1025; Cal Civ Code § 3342; Fla Stat Ann § 767.04; Iowa Code Ann § 351.28; Mich Comp Laws Ann § 287.351; Minn Stat Ann § 347.22; Mont Code Ann § 27-1-715; Neb Rev Stat § 54-601; NJ Stat Ann § 4:19-16).