[2 NYS3d 882]

Cynthia Bitonti, Plaintiff, v Patrick McGeever et al., Defendants.

Supreme Court, Suffolk County, January 29, 2015

### APPEARANCES OF COUNSEL

*Jacobson & Schwartz, LLP*, Jericho, for defendants.

*Rubin & Licatesi, P.C.*, Garden City, for plaintiff.

JOSEPH C. PASTORESSA, J.

Ordered that the motion by defendants Patrick McGeever and Diana Hinton seeking summary judgment dismissing the complaint is granted.

Plaintiff Cynthia Bitonti commenced this action against defendants Patrick McGeever and Diana Hinton to recover damages for injuries she allegedly sustained as a result of an attack by a dog that occurred on February 7, 2009. It is alleged that plaintiff was bitten by defendant Patrick McGeever's dog, a mixed breed named Bosley, while they were visiting her apartment located at 90 Cuba Hill Road in the Town of Huntington.

Defendants now move for summary judgment on the basis that plaintiff is unable to establish that Bosley displayed any vicious tendencies or propensities, or that they had knowledge or should have had knowledge of such propensity on behalf of Bosley prior to the incident. In addition, defendant Hinton contends that she is not liable for plaintiff's alleged injuries, because the evidence unequivocally demonstrates that she did not own Bosley and was not present at the time of the incident. In support of the motion, defendants submit copies of the pleadings, the parties' deposition transcripts, and their own affidavits. Defendants also submit the deposition transcript of nonparty witness Christen Pugliani. Plaintiff opposes the motion on the ground that material questions of fact exist as to whether defendants should have known of Bosley's vicious propensities, because Bosley allegedly was an abused rescue dog.

The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395 [1957]). The movant has the initial burden of proving entitlement to summary judgment (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*Winegrad v New York Univ. Med. Ctr.*). Once such proof has been offered, the burden then shifts to the opposing party, who, in order to defeat the motion for summary

judgment, must proffer evidence in admissible form and must "show facts sufficient to require a trial of any issue of fact" (CPLR 3212 [b]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). As the court's function on such a motion is to determine whether issues of fact exist, not to resolve issues of fact or to determine matters of credibility, the facts alleged by the opposing party and all inferences that may be drawn are to be accepted as true (*see Roth v Barreto*, 289 AD2d 557 [2001]; *O'Neill v Town of Fishkill*, 134 AD2d 487 [1987]).

Where a pet owner knows or should have known of his or her pet's vicious propensities, he or she is strictly liable "for the harm the animal causes as a result of those propensities" (*Collier v Zambito*, 1 NY3d 444, 448 [2004]; *see Bernstein v Penny Whistle Toys, Inc.*, 10 NY3d 787 [2008]; *Bard v Jahnke*, 6 NY3d 592 [2006]; Restatement [Second] of Torts § 509 [1]). Vicious propensities include the "propensity to do any action that might endanger the safety of the persons [or] property of others in a given situation" (*Collier v Zambito* at 446). Evidence tending to demonstrate a dog's vicious propensities includes a prior attack; the dog's tendency to growl, snap or bare its teeth; and whether the owner chose to restrain the dog or the manner in which the dog was restrained (*see Bard v Jahnke*; *Collier v Zambito*; *Dykeman v Heht*, 52 AD3d 767 [2008]). In the absence of a prior bite, a triable issue of fact regarding a defendant's knowledge of his or her animal's vicious propensity may be raised by other evidence of the animal's aggressive behavior (*see Grillo v Williams*, 71 AD3d 1480 [2010]; *Sherman v Torres*, 35 AD3d 436 [2006]; *Calabro v Bennett*, 291 AD2d 616 [2002]). Also, the keeping of a dog as a guard dog may give rise to an inference that the owner had knowledge of the dog's vicious propensities (*see Parente v Chavez*, 17 AD3d 648 [2005]). Moreover, when an animal reflects a proclivity to act in a way that puts others at risk of harm, that animal can be found to have vicious propensities, but only when such proclivity results in an injury (*see Collier v Zambito*; *Dykeman v Heht*; *Seybolt v Wheeler*, 42 AD3d 643 [2007]). In contrast, evidence of "normal canine behavior," such as barking and chasing small animals, is insufficient to demonstrate vicious propensities (*see Campo v Holland*, 32 AD3d 630, 631 [2006]; *Seybolt v Wheeler*; *Fontanas v Wilson*, 300 AD2d 808 [2002]). "[O]wnership of [a] dog by [a] defendant [is not] a necessary condition [to] recovery[,] [as] [k]eeping or harboring the dog is sufficient" (*Holzer v Rosenberg*, 209 App Div 823, 823

[1924]). "A person who harbors or keeps a dog with knowledge of the dog's vicious propensities is liable for injuries caused by the dog" (*Dufour v Brown*, 66 AD3d 1217, 1218 [2009]).

Defendant Hinton testified at an examination before trial that she is the owner of the premises located at 11 Lakewood Avenue, Lake Ronkonkoma, New York, and that her son, defendant McGeever, and his dog, Bosley, lived with her for approximately two years. She testified that Bosley, an approximately 60- to 80-pound "mutt," had been adopted by her son from a kennel in California. Hinton testified that she did not know if Bosley was a rescue dog. She testified that the dog stayed in her son's room on the second floor of her home, but had free range of the house, and while she would occasionally walk and feed it, her son was responsible for Bosley's maintenance and upkeep. She testified that she owned a pug named Jake, who was a rescue dog, and that Bosley would always run away from Jake whenever Jake started barking at him. Hinton testified that she became aware of the incident with plaintiff when her son phoned to inform her he was bringing Bosley home because he had bitten someone. She further testified that her son stated "his friend was drunk and kept putting her face into Bosley's face even though he told her to stop, and that Bosley bit her." In addition, Hinton testified that there were no "Beware of Dog" signs posted on her premises, that Bosley barked when someone came to the front door, but would quiet down immediately, that Bosley never bared his teeth or growled at people, and that Bosley would playfully jump on her son's girlfriend or her daughters, but he ignored her grandchildren whenever they were over. Lastly, Hinton testified that her son informed her that Bosley did not like it when people "got in his face."

Plaintiff testified at an examination before trial that she worked with McGeever at Long Island Veterinary Specialist and that, prior to the incident, she had been introduced to Bosley, a pit bull owned by McGeever, who would bring the dog to work daily. Plaintiff testified that McGeever would keep Bosley in a "run" or in an exam room with him, that she did not have too many interactions with Bosley because he was too aggressive and jumped on the employees, and that McGeever always had to restrain Bosley. She testified that she is unaware of Bosley ever having bitten anyone before he bit her, but that he was an abused rescue dog prior to being adopted by McGeever. Plaintiff testified that on the day of her accident, she and

Christen Pugliani were at her house, that McGeever was invited to her home by his girlfriend, Christen Pugliani, that he arrived with Bosley, and that they were "hanging out" and drinking. She testified that approximately two hours after McGeever's arrival, the dog began to pant and bark, but not growl, as it was sitting on the floor in front of her. Plaintiff testified that she stood up and leaned towards Bosley to comfort him when he lunged and bit her lower jaw and the inside of her mouth on the right side. She testified that McGeever immediately pulled Bosley off of her and held him back, but the dog continued to growl while standing up on its hind legs. Plaintiff further testified that McGeever wrote a letter to her apologizing for the incident, and that she does not recall him warning her not to "get in Bosley's face," because she would have heeded the warning.

Defendant McGeever testified that he has owned Bosley for six years, that he is a 75-pound "mutt" of unknown heritage, and that he adopted Bosley from an animal shelter where he worked in California. He testified that Bosley had been found on the side of the road as a puppy and had been previously adopted, but was returned to the shelter with sores all over his body from neglect. McGeever testified that prior to starting veterinary school, he returned home to his mother's residence with Bosley, and that he met plaintiff and her friend, Christen Pugliani, who became his girlfriend, at Long Island Veterinary Specialist, where he worked. He testified that he would occasionally bring Bosley to work with him, that Bosley would stay with him in an examination room, and that, although plaintiff never really interacted with Bosley while he was in the office, she had been introduced to him. He testified that he walks Bosley on a leash because there are not a lot of "off leash" areas in New York, and that he has never put a muzzle on Bosley. McGeever testified that on the day of the incident he was walking Bosley when he received a call from Pugliani inviting him over to plaintiff's apartment to "hang out," and that when he arrived plaintiff and Pugliani were drinking and watching television. He testified that while they were all sitting on the couch, plaintiff invited Bosley onto the couch and jokingly stated that "Bosley was going to be her boyfriend for the night," and that plaintiff laid on top of the dog and began kissing its face. McGeever testified that when Bosley began to pant while "kissing" plaintiff's face, he informed her that the dog did not like her laying on top of him or her "being in his face," and that

she was "stressing Bosley out" and making him uncomfortable. He testified that Bosley then bared his teeth at plaintiff, that despite his warnings she continued to kiss Bosley, informing him that it was fine, and that the incident happened when he stood up to remove Bosley from the couch. He testified that Bosley turned toward plaintiff, bit her in the mouth and then laid back down. McGeever testified that he did not intervene to remove Bosley from the situation sooner because he was trying to respect plaintiff as a professional in the veterinary field, and that he believed she would have noticed the signs of a "stressed" dog and stopped her behavior towards Bosley. McGeever testified that he never had to warn people to stay out of the dog's face before the incident, because he had never seen anyone do to Bosley what plaintiff did, but now he does warn people against putting their faces in his dog's face. He testified that prior to the incident, the only times he observed Bosley stressed were at the veterinarian's office and at the hospital before his surgery, but he only whined to go home. McGeever further testified that Bosley had never bitten anyone prior to biting plaintiff, that he had never observed the dog growling or bare its teeth at anyone, and that the dog is not "a barking dog." In addition, McGeever testified that he took Bosley home after the incident, and that he wrote a letter to plaintiff apologizing to her about the incident, because he felt bad his dog had bitten her and he was trying to impress his girlfriend at the time.

Nonparty witness Christen Pugliani testified at an examination before trial that at the time of the incident she and plaintiff were best friends, that she was dating McGeever, and that they all worked at Long Island Veterinary Specialist. Pugliani testified that on the day of the incident she was visiting with plaintiff at her home when they decided to invite McGeever over, because plaintiff liked McGeever and Bosley, and that they had been drinking and just "hanging out." She testified that McGeever declined the invitation at first, because he had Bosley with him, but plaintiff informed him that he could bring the dog with him. She testified that Bosley was a Chow Chow mixed with another breed; that she believed the dog had been abused prior to McGeever adopting him, because McGeever would tell people to take it slowly with the dog; that Bosley was a great dog and loved McGeever; and that McGeever would bring Bosley to work with him occasionally. Pugliani testified that she was unaware of Bosley ever having

bitten anyone prior to biting plaintiff or being aggressive towards anyone, and that she does not recall the dog growling or snapping its teeth at anyone, but that she was cautious around the dog, because it had been abused and, after having worked in the veterinary field for such a long time, she is leery around the Chow Chow breed. She testified that Bosley was sitting on the couch next to McGeever when plaintiff stood up and grabbed Bosley's face and "floppy" ears, and "smushed" her face into Bosley's face while saying "see, he's not that bad." Pugliani testified that she did not actually see Bosley bite plaintiff, she only heard plaintiff say "Oh my god" and run into the bathroom, and that she does not recall whether McGeever said anything to plaintiff or if Bosley was panting prior to the incident. In addition, Pugliani testified that McGeever wrote the letter to plaintiff at her insistence "to make things right if he wanted to stay in a relationship with her," and that, since plaintiff was in the veterinary field, she should have known better than to behave the way she did with the dog.

Here, defendants have established, prima facie, their entitlement to judgment as a matter of law with evidence showing that they neither knew nor should have known of Bosley's vicious propensities or that the dog's behavior reflected a proclivity to act in a way that put others at risk of harm (*see Petrone v Fernandez*, 12 NY3d 546 [2009]; *Bard v Jahnke*; *Collier v Zambito*; *Roche v Bryant*, 81 AD3d 707 [2011]; *Miletich v Kopp*, 70 AD3d 1095 [2010]; *Galgano v Town of N. Hempstead*, 41 AD3d 536 [2007]; *Brooks v Parshall*, 25 AD3d 853 [2006]; *Blackstone v Hayward*, 304 AD2d 941 [2003]). Defendants' evidence establishes that Bosley and McGeever had been living in Hinton's home for approximately two years, that Bosley lived with Hinton's pug and had lived with other animals prior to moving into Hinton's home without incident, and that he did not show any acts of aggression prior to the incident with plaintiff (*see Malpezzi v Ryan*, 28 AD3d 1036 [2006]; *Levine v Kadison*, 70 AD3d 651 [2010]). The evidence also demonstrates that no one ever complained about the dog's behavior prior to it biting plaintiff (*see Scheidt v Oberg*, 65 AD3d 740 [2009]), and that plaintiff had been around the dog on prior occasions without incident (*see Vallejo v Ebert*, 120 AD3d 797 [2014]).

In opposition, plaintiff has failed to raise a triable issue of fact as to whether the defendants knew or should have known of Bosley's alleged vicious propensities prior to the subject incident (*see Henry v Higgins*, 117 AD3d 796 [2014]; *Sareyani-*

*Coffey v McAleer*, 112 AD3d 907 [2013]; *Scheidt v Oberg*, 65 AD3d 740 [2009]). Plaintiff's evidence in opposition fails to establish that Bosley's behavior ever exceeded that of a "normal canine" (*see Collier v Zambito* at 447; *Campo v Holland*). Evidence that McGeever routinely kept the dog on a leash whenever he walked it, that it was on a leash when McGeever arrived at plaintiff's home, and that Bosley was a rescue dog does not support an inference that defendants were aware the dog might pose a danger (*see Roche v Bryant*, 81 AD3d 707 [2011]; *Palumbo v Nikirk*, 59 AD3d 691 [2009]; *Palleschi v Granger*, 13 AD3d 871 [2004]). In addition, the mere fact that the dog was of a large breed and weighed approximately 80 pounds when the attack occurred does not raise a triable issue of fact (*see Malpezzi v Ryan*; *Palleschi v Granger*; *Mulhern v Chai Mgt.*, 309 AD2d 995 [2003]). Finally, contrary to plaintiff's assertion, the letter written by McGeever to plaintiff immediately after the subject attack indicating that he was sorry Bosley had bitten her does not establish that he was aware of any vicious propensities on the dog's behalf prior to the subject incident (*see e.g. Vallejo v Ebert*, 120 AD3d 797 [2014]; *Curbelo v Walker*, 81 AD3d 772 [2011]; *Egan v Hom*, 74 AD3d 1133 [2010]). Accordingly, defendants' motion for summary judgment is granted.