OPINION OF THE COURT
Leonard D. Steinman, J.
“Barking and running around are what dogs do.” So observed the Court of Appeals in Collier v Zambito (1 NY3d 444, 447 [2004]). Such behavior, consistent with normal canine activity, is not threatening or menacing and does not reflect a proclivity to act in a way that puts others at risk of harm. (Id.) But what about jumping up on people? As many puppy owners will attest, dogs are inclined to do that too. Is this type of behavior evidence of “a vicious” propensity sufficient to hold a dog owner strictly liable for any injury that might result? That is the issue in this motion for summary judgment brought by defendant, Engin Sangiray.
Background
On the afternoon of June 8, 2012, Jacqueline Waldman, then 82 years old, was walking with her three-year-old grandson in her Hewlett Harbor neighborhood. During the course of her walk she reached Sangiray's property. What happened next is disputed, but the court will credit Waldman’s version of the facts, as required, for purposes of determining Sangiray’s summary judgment motion. (See William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013] [on a motion for summary judgment facts must be viewed in the light most favorable to the non-moving party].)
When Waldman and her grandson passed Sangiray’s home, her grandson took one step up onto a “little slope” onto Sangiray’s property. (Waldman July 30, 2014 deposition tr at 40.) Waldman “put [her] foot on Sangiray’s grass” because she “wanted to pull” her grandson off the grass. (Id. at 37, 38.) Mrs. Waldman does not recall hearing any growling, barking, or the jangling of a dog collar before Louie, Sangiray’s two-year-old Siberian Husky, came from her right side and “hit” her by placing his paws on both her shoulders. Waldman threw her grandson into some bushes to protect him. Louie’s hit brought Waldman down to the grass on her knees. She stated that she “tried to roll over and [Louie] kept hitting [her].” (Id. at 47.) She alleges that Louie rolled her over onto her back with his front paws and then remained in contact with her for an entire hour, recalling, “every time I got up he threw me more.” (Id. at 56.) At some point during the incident, Waldman claims Louie bit her *818 and that she felt Louie’s mouth close around her arm. {Id. at 48, 56.) Waldman was eventually rescued by a passing golfer and Sangiray’s son, who took the dog away. Waldman allegedly sustained several injuries, including inflamed, ruptured and lacerated tendons in her hand and wrist, requiring surgery, and facial cuts.
There is no evidence in the record that Louie was anything but a friendly, rambunctious family pet, who was mainly kept outside of the home and barked often (Sangiray no longer owns Louie). Louie never had an incident where he growled, bared his teeth, bit, or lunged at anyone. Louie was contained in the Sangiray’s yard by an electronic fence, although he would occasionally be restrained by a 20-foot chain affixed to his dog house when he would dig up the backyard. Louie was not chained on the day of the incident.
Louie did have a habit, however, of jumping up on people — at least his owners — to greet them. Sangiray testified that Louie liked to jump on people to get their attention, “being the friendly dog that he is.” (Sangiray Sept. 22, 2014 deposition tr at 83.) Sangiray testified that he never observed Louie jumping on strangers, but admitted that he would jump on his in-laws. He could not recall if Louie would jump on his children’s friends ' when they came to the house. Nonetheless, from Sangiray’s testimony, it would be fair for a jury to conclude that Louie is a friendly jumper. There is no evidence, however, that Louie ever . knocked anyone to the ground by jumping on them.
Legal Analysis
Contrary to popular belief, a dog is not “entitled to one free bite” in the State of New York. Instead, for at least 200 years the common-law rule in New York has been that the owner of a domestic animal, such as a dog, who either knows or should have known of the animal’s vicious propensities will be held liable for the harm caused by the animal as a result of those propensities. (Collier v Zambito, 1 NY3d 444 [2004]; Vrooman v Lawyer, 13 Johns 339 [1816].) Once such knowledge is established, the dog owner faces strict liability. (Bard v Jahnke, 6 NY3d 592, 597 [2006].)
The rationale for the rule has been explained as follows: one who keeps a dog with dangerous propensities introduces an unusual danger to the community without any positive counterbalance. (Restatement [Second] of Torts § 509.) As a result, even if one has exercised the utmost care to prevent harm to another by their dog, liability is imposed for any injury *819 inflicted consistent with the known dangerous propensity. There is zero tolerance in this regard. The risk of injury from a dog known to have a propensity for causing such an injury is a risk society has deemed unacceptable in all cases.
“Dangerous” propensities as used above is a more apt description of the state of the law than “vicious” propensities, the term historically used in case law. This is because “vicious propensities” has been defined to include the “propensity to do any act that might endanger the safety of the persons and property of others in a given situation.” (Collier v Zambito, 1 NY3d at 446, quoting Dickson v McCoy, 39 NY 400, 403 [1868].) As further explained in Collier, an animal that behaves in a manner that would not necessarily be considered violent or ferocious, but nevertheless reflects a proclivity to act in a way that puts others at risk of harm, can be found to have “vicious” propensities.
. Which brings us to Louie. The evidence reflects that prior to the incident in question, Louie was not vicious — to the contrary he was a friendly, happy dog who loved people. There is no evidence to support the proposition that Sangiray knew or should have known that Louie would bite anyone. But Louie had a fault: he expressed his happiness and excitement when greeting people by jumping on them, a fault not uncommon in young dogs, but a fault nonetheless. Indeed, hundreds, if not thousands, of websites provide instruction on how to train a dog not to jump on people, and a Google search reflects the popularity of the subject. (See e.g. Simon Foden, How to Stop a Siberian Husky from Jumping, The Nest, available at http:// pets.thenest.com/stop-siberian-husky-jumping-5400.html.)
Dogs are trained not to jump on people for several reasons, but one is that large and medium-sized dogs (like Siberian Huskies) can knock people over and hurt them in the process, particularly small children and the elderly. As a result, case law has recognized that where a dog has demonstrated a propensity to jump on people liability may result for harm caused by such behavior. (See Anderson v Carduner, 279 AD2d 369, 369-370 [1st Dept 2001], quoting Prosser, Torts § 75 at 515 [3d ed 1964] [“a known tendency to attack others, even in playfulness, as in the case of the overly friendly large dog with a propensity for enthusiastically jumping up on visitors, will be enough to make the defendant liable” for resulting injuries].)
Various courts have recognized that jumping may be a “vicious” propensity in a dog. (See e.g. Francis v Curley Family Ltd. Partnership, 33 AD3d 852 [2d Dept 2006] [infant allegedly *820 was injured while running away from a dog previously known to jump up on children]; Stalzer v Deabrue, 50 Misc 3d 142[A], 2016 NY Slip Op 50205[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2016] [reversing dismissal of action seeking damages for injury to second dog after first dog jumped on and injured it].) Pew cases, however, involve injuries to people actually caused by such jumps, compared to the legions of dog bite cases. Anderson is one — in that action the plaintiff was allegedly injured when poked in the eye by a rising dog’s snout. (Anderson v Carduner, 279 AD2d at 369.) Another is Felgemacher v Rugg (28 AD3d 1088 [4th Dept 2006]). In Felgemacher, defendant’s summary judgment motion was denied where plaintiff was allegedly injured after the defendant’s decedent’s dog jumped onto plaintiff’s back and knocked him to the ground. The evidence reflected that the dog previously had been chained to prevent it from jumping on cars at decedent’s service station. (See also Amado v Estrich, 182 AD2d 1109 [4th Dept 1992] [dog jumped on and injured bicycle rider]; Lagoda v Dorr, 28 AD2d 208 [3d Dept 1967] [same]; cf. Althoff v Lefebvre, 240 AD2d 604 [2d Dept 1997] [summary judgment granted to defendant where plaintiff, who was injured after dog jumped on him causing a fall, failed to establish the known existence of the vicious propensity].)
Therefore, despite the fact that Louie may never have bitten, growled, or bared his teeth at anyone, Sangiray may be held liable for injuries caused by Louie’s known jumping if found to be a dangerous propensity by a jury.* The drastic remedy of summary judgment should only be granted where there are no material issues of fact. (Andre v Pomeroy, 35 NY2d 361, 364 [1974].) Sangiray is not liable, however, for any injury allegedly caused by Louie’s biting. There is no evidence that Louie had this dangerous propensity prior to the unfortunate incident complained of.
Defendant’s motion for summary judgment, therefore, is denied in part and granted in part.
Any relief requested not specifically addressed herein is denied.

 Sangiray notes in his supporting papers that Waldman was trespassing on his property, but does not argue that such trespass amounts to an absolute defense of Waldman’s claim entitling him to summary judgment. As a result, the court does not reach this issue. In all events, Waldman disputed that she was, in fact, trespassing upon Sangiray’s property.