[49 NYS3d 436]

GREGORY SCAVETTA et al., Appellants, v STUART WECHSLER, Respondent.

First Department, March 16, 2017

### APPEARANCES OF COUNSEL

*Seiden & Kaufman*, Carle Place (*Steven J. Seiden* of counsel), for appellants.

*Devitt Spellman Barrett, LLP*, Smithtown (*Maggie O'Connor* and *John M. Denby* of counsel), for respondent.

### OPINION OF THE COURT

Acosta, J.P.

The primary question raised in this appeal is whether a negligence claim may be asserted against a defendant who attached a dog's leash to an unsecured bicycle rack, which was put into motion when the dog dragged it through the streets and into the plaintiff, causing injury. We answer in the negative, on constraint of the Court of Appeals' *Bard* rule that " '[w]hen harm is caused by a domestic animal, its owner's liability is determined *solely* by application of the rule' . . . of strict liability for harm caused by a domestic animal whose owner knows or should have known of the animal's vicious propensities" (*Petrone v Fernandez*, 12 NY3d 546, 550 [2009], quoting *Bard v Jahnke*, 6 NY3d 592, 599 [2006]). Therefore, we must affirm the order of the motion court, which, inter alia, granted defendant's motion for summary judgment dismissing the complaint.

At the same time, we take this opportunity to acknowledge plaintiffs' persuasive argument that the *Bard* rule may be neither prudent law nor prudent policy. As this case illustrates, a plaintiff cannot recover for injuries caused by a dog that has not demonstrated vicious propensities, even when the injuries are proximately caused by the owner's negligent conduct in controlling or failing to control the dog. This rule immunizes careless supervision of domestic animals by their owners and leaves those harmed in the State of New York without recourse.

Facts and Background

On March 24, 2014, defendant was walking his dog on the way to meet a friend at a pizzeria on Lexington Avenue be-

tween 93rd and 94th Streets in Manhattan. Upon arriving at the restaurant, he tied the 35-pound dog by its leash to a metal bicycle rack, which weighed about five pounds and had dimensions of approximately three feet by three feet by two feet. The rack was of the sort to which cyclists or bicycle delivery workers ordinarily lock their bicycles for security outside of buildings.

Defendant did not assure himself, however, that the rack was secured to the ground or to anything else. As he reached the entrance of the pizzeria, defendant heard the rack scraping against the sidewalk and turned to see his dog running down the street, pulling the rack with its leash. It appeared to defendant that the dog started to follow him as he approached the restaurant but was frightened by the noise of the rack scraping against the sidewalk and began to run. The dog was not chasing anything, but it was running "[v]ery fast" and was "panicked." Defendant started running after his dog, but was unable to catch up to it.

Meanwhile, plaintiff Gregory Scavetta was on his way to work, walking north on Lexington Avenue, and began to cross 93rd Street in the crosswalk. As he crossed the street, Scavetta heard the scraping of the rack and saw the dog running straight towards him, dragging the rack behind it. The dog ran past Scavetta and hid underneath a car. Scavetta then took one or two steps toward the dog, to see if it was injured and whether he could disconnect the rack from the leash, but the dog immediately "sprung back out from underneath the car and took off again." The dog ran back towards Scavetta, still dragging the rack, which struck him. One of Scavetta's legs got caught in the rack's crossbars, and, as the dog continued to pull the rack, Scavetta was spun around so that both of his feet went up in the air and he landed on his back.

The dog ran off toward Park Avenue. Defendant recovered the dog approximately two hours later, after his dog walker found the dog at Lexington Avenue and 86th Street. Scavetta was taken to Mt. Sinai Hospital and treated for an injury to his left leg.

Scavetta and his wife commenced this action, alleging among other things that defendant was negligent or reckless in tying his dog to the unsecured bicycle rack, because he knew or should have known that the dog could pull it. Plaintiffs did not assert a cause of action sounding in strict liability, and stated in their verified bill of particulars that "the dog's viciousness is not an element of plaintiff[s'] cause of action."

Defendant moved for summary judgment dismissing the complaint, arguing among other things that New York State does not recognize negligence as a cause of action for injuries caused by domestic animals. Plaintiffs cross-moved for summary judgment on the issue of liability, noting that they "intentionally did not comment about strict liability in their Bill of Particulars," since the action "does not involve vicious propensities of the dog." To the contrary, plaintiffs argued, defendant is liable "for negligently creating an extremely dangerous condition and unreasonable risk of harm to others." Plaintiffs explained that, "[b]y attaching the dog's eight-foot leash to an unsecured, flimsy, light metal bicycle rack that defendant knew, or should have known, the dog could easily drag through the crowded streets and sidewalks of New York City, defendant turned the otherwise innocuous metal rack into a dangerous instrumentality."

The court granted defendant's motion for summary judgment dismissing the complaint, and denied plaintiffs' cross motion on the issue of liability, citing Court of Appeals precedent holding that negligence is not a viable cause of action where an injury is caused by a domestic animal and that a plaintiff may only recover in strict liability based upon a showing that the owner knew or should have known that the animal had a vicious propensity. The court noted that plaintiffs did not cite any case law to support the proposition that the case was distinguishable on the ground that defendant converted the metal rack into an instrument of harm. The court concluded that it was constrained to dismiss the complaint because "negligence is no longer a basis for imposing liability, and plaintiffs expressly state that they do not pursue a strict liability claim premised upon any propensities of defendant's dog."

Plaintiffs appeal.

Discussion

The "vicious propensity" doctrine, which provides for strict liability against an owner of a domestic animal that causes harm, where the owner knows or should have known of the animal's vicious propensities, has been the law in New York since at least 1816 (*Collier v Zambito*, 1 NY3d 444, 446 [2004], citing *Vrooman v Lawyer*, 13 Johns 339 [1816]). The term "vicious propensity" has become a term of art, having expanded from its ordinary definition to "include the propensity to do any act that might endanger the safety of the persons and property of others in a given situation" (*id.* [internal quotation marks

omitted]), and even includes a nondangerous proclivity where "such proclivity results in the injury giving rise to the lawsuit" (*id.* at 447). For many years, however, the question lingered whether a plaintiff could bring a common-law negligence claim against an owner of a domestic animal that caused injury, in the event that strict liability was unavailable due to a lack of evidence regarding the animal's propensities (*but see Hyland v Cobb*, 252 NY 325, 326-327 [1929] [acknowledging that "negligence by an owner, even without knowledge concerning a domestic animal's evil propensity, may create liability"]).

The Court of Appeals addressed this question in *Bard v Jahnke* (6 NY3d 592 [2006], *supra*), where a carpenter who was working on the defendant's farm was attacked and injured by the defendant's breeding bull. The Court rejected the plaintiff's strict liability claim because there was no evidence that the bull had ever exhibited threatening behavior toward other farm animals or humans (*id.* at 597). In addition, the Court rejected the plaintiff's alternative argument that the defendant was negligent in failing to restrain the bull or warn the plaintiff of the bull's presence, holding that "when harm is caused by a domestic animal, its owner's liability is determined solely by application of the [strict liability] rule articulated in *Collier*" (*id.* at 599).

The *Bard* rule was not established without controversy. In its analysis, the four-judge majority of the Court rejected the rule stated in Restatement (Second) of Torts § 518 permitting liability where an owner of a domestic animal is negligent in failing to prevent harm caused by the animal (or intentionally causes the animal to do harm), irrespective of whether any vicious propensity exists (*Bard*, 6 NY3d at 597-599). Three judges dissented, reasoning that it would have been "wiser to follow the Restatement rule, as ha[d] almost every other state that ha[d] considered the question" (*id.* at 603 [R.S. Smith, J., dissenting]).[1] In the dissenters' view, the Court had left our state "with an archaic, rigid rule, contrary to fairness and common sense, that will probably be eroded by ad hoc exceptions" (*id.* at 599 [R.S. Smith, J., dissenting]).

Despite the discord over the *Bard* rule, it has persisted. For example, in *Petrone v Fernandez*, the Court of Appeals relied on *Bard* and confirmed that, even where a plaintiff presents

---

1. New York has continued to be "a unique outlier in its rejection of the Restatement (Second) of Torts § 518" (*Doerr v Goldsmith*, 25 NY3d 1114, 1149 [2015, Fahey, J., dissenting]).

"some evidence of negligence"—e.g., the defendant's violation of a local leash law—the evidence is irrevelant because "negligence is no longer a basis for imposing liability after *Collier* and *Bard*" (12 NY3d at 550 [internal quotation marks omitted]). Two judges concurred in the result "on constraint of *Bard*," expressing their view that "it was wrong to reject negligence altogether as a basis for the liability of an animal owner" (*id.* at 551-552 [Pigott, J., concurring]).

Thus far, the Court of Appeals has carved out only one exception to *Bard*'s bright-line rule. In *Hastings v Sauve* (21 NY3d 122 [2013]), the plaintiff was driving her van and was injured when she struck the defendants' cow, which had wandered from the farm and onto a public road. The Court held "that a landowner or the owner of an animal may be liable under ordinary tort-law principles when a farm animal—i.e., a domestic animal as that term is defined in Agriculture and Markets Law § 108 (7)—is negligently allowed to stray from the property on which the animal is kept" (*id.* at 125-126).[2] However, the *Hastings* Court declined to decide "whether the same rule applies to dogs, cats or other household pets," adding that "that question must await a different case" (*id.* at 126).

The question was answered in *Doerr v Goldsmith* (25 NY3d 1114 [2015], *supra*), in which the plaintiff was injured by a dog while riding his bicycle in Central Park (*see id.* at 1117 [Abdus-Salaam, J., concurring]). The dog's owner called the dog from one side of the road, while her boyfriend released the dog from the other side, and the dog ran into plaintiff's way; plaintiff struck the dog and fell from his bike, sustaining injuries (*id.*). This Court, which vacated its original decision finding for the defendants and issued a new decision in light of *Hastings*, held that a negligence claim could lie "because it was defendants' actions, and not the dog's own instinctive, volitional behavior, that most proximately caused the accident" (*Doerr v Goldsmith*, 110 AD3d 453, 455 [1st Dept 2013], *revd* 25 NY3d 1114 [2015]). The case, according to this Court, was "not about the particular actions of an animal that led to a person's injury. Rather, it [wa]s about the actions of a person that turned an animal into

---

**2.** This indicates that the rule is not as broad as when it was originally devised in *Bard*, and could be properly rephrased as follows: When harm is caused by a domestic animal, its owner's liability is determined in accordance with the vicious propensity doctrine, *unless* the animal is a domestic farm animal subject to an owner's duty to prevent it from wandering off the farm, in which case common-law negligence applies (*see Doerr*, 25 NY3d at 1154 [Fahey, J., dissenting]).

an instrumentality of harm" (*id.* at 455). This Court reasoned that "the dog was in the control of defendants at all times in the split second before the accident occurred. Had [the one defendant] not called the dog, and [the other defendant] not let it go, plaintiff would have ridden past them without incident" (*id.*).

However, a majority of the Court of Appeals reversed in a short memorandum decision, declaring that "[u]nder the circumstances of [*Doerr* and its companion case] and in light of the arguments advanced by the parties, [*Bard*] constrains us to reject plaintiffs' negligence causes of action against defendants arising from injuries caused by defendants' dogs" (25 NY3d at 1116). The Court further clarified that the *Hastings* exception to the *Bard* rule is confined to cases involving "domestic farm animals subject to an owner's duty to prevent such animals from wandering unsupervised off the farm" (*id.*).[3]

The *Doerr* Court was deeply divided over whether another exception to the *Bard* rule should have applied in the circumstances of that case, and whether the rule should be abandoned altogether. Judge Abdus-Salaam (joined by Judges Read and Stein) concurred, relying on *Bard* as stare decisis and explaining that "[b]ecause *Bard* does not impose a duty on a pet owner to exercise reasonable care in the control of a pet that has no known vicious propensity, the owner's failure to exercise such care, whether by act or omission, does not furnish a basis for liability" (25 NY3d at 1132). In addition, the concurrence determined that the plaintiffs' "negligence claims must fail because the particular exceptions to the *Bard* rule proposed by plaintiffs are incompatible with *Bard* and its progeny" (*id.* at 1138-1139). Chief Judge Lippman, dissenting in *Doerr* but concurring in the companion case, concluded that *Doerr* itself was an exceptional case that should not have been engulfed by *Bard*, because the injury was caused by the dog acting under the owner's direction and control, not by its threatening or menacing behavior (*see* 25 NY3d at 1141-1142).

---

**3.** In *Doerr*'s companion case, *Dobinski v Lockhart*, the defendants' dogs left their farm and wandered onto a road (25 NY3d at 1120 [Abdus-Salaam, J., concurring]). One of the plaintiffs, riding her bicycle, struck one of the dogs and was severely injured. The Court affirmed the Fourth Department's grant of summary judgment dismissing the plaintiffs' strict liability claim, because the plaintiffs failed to raise triable issues of fact with regard to defendants' knowledge of the dogs' "harmful proclivities" (*id.* at 1116). Thus, the Court refused to apply the *Hastings* exception where dogs, rather than farm animals, wandered from the property on which they were kept.

In a separate dissent, Judge Fahey (joined by Judge Pigott) concluded that *Bard* was wrongly decided and should be overruled, and that "[New York] should return to the basic principle that the owner of an animal may be liable for failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation" (25 NY3d at 1142). Judge Fahey observed that, prior to *Bard*, several Court of Appeals decisions and "three of the Departments of the Appellate Division recognized that a negligence claim for animal-induced injuries could be brought as an alternative to a strict liability claim" (*id.* at 1143-1144). He further noted that "the legacy of the *Bard* decision" is " 'that the strict liability involved in *Collier* is the *only* kind of liability the owner of a domestic animal may face—that, in other words, there is no such thing as negligence liability where harm done by domestic animals is concerned' " (*id.* at 1150-1151, quoting *Bard*, 6 NY3d at 601 [R.S. Smith, J., dissenting] [adding emphasis]).

In light of this Court of Appeals precedent, we must reject plaintiffs' negligence claim. Plaintiffs argue that the instant matter is distinguishable from *Bard*, *Doerr*, and similar cases involving harm caused by domestic animals, because this case does not involve the nature of an animal acting of its own volition, but concerns an injury that was caused by its owner's conduct. To be sure, the majority in *Doerr* left open the possibility that other exceptions to the *Bard* rule could be recognized where a domestic animal was involved in an injury; indeed, the Court explicitly limited its holding to the particular circumstances of that case (*id.* at 1116).[4] And, of course, there are notable factual distinctions between this case and *Doerr*: Here, plaintiffs allege that defendant caused the injury not by commanding the dog as in *Doerr*, but by mobilizing a dangerous object when he attached his dog's leash to the unsecured rack. In other words, plaintiffs argue that defendant launched an instrumentality of harm that was not the dog itself but an inanimate object that was put into motion by defendant (*cf.*

---

**4.** Additionally, as plaintiffs emphasize, the *Doerr* concurrence stated that, insofar as those plaintiffs had offered "no alternative theory of recovery, [it] neither reject[ed] nor endorse[d] any other potential legal theory or exception to the *Bard* rule not advanced by the parties" (25 NY3d at 1138-1139).
It may be that the concurrence was suggesting that it might have distinguished *Bard* under a different factual scenario (as plaintiffs would have us do here), but it seems more likely that it was alluding to the possibility that other causes of action, such as a reckless or intentional tort, could apply where a person directs a dog into another's path (*see id.* at 1139 n 4).

*Doerr*, 110 AD3d at 455). However, the exception plaintiffs would have us recognize here—based on the defendant's conduct, and not the dog's, as the cause of the injury—is analogous to the one this Court accepted but the Court of Appeals rejected in *Doerr* (25 NY3d 1114).[5] Furthermore, it appears that, aside from the *Hastings* exception, *Bard* continues to be an absolute bar to negligence claims where domestic animals cause injury (*see Doerr*, 25 NY3d at 1150-1151 [Fahey, J., dissenting], quoting *Bard*, 6 NY3d at 601 [R.S. Smith, J., dissenting] ["(T)here is no such thing as negligence liability where harm done by domestic animals is concerned"]; *see also Petrone*, 12 NY3d at 550 [same]). Accordingly, we conclude that we are constrained by Court of Appeals precedent to reject plaintiffs' negligence claim.

Were we not so constrained, however, we would, like the dissenting judges in *Bard* and *Doerr*, permit plaintiffs to pursue

5. Of course, it is not always clear why a dog acts in a given way, whether by its own choice or pursuant to its owner's direction and training. In *Doerr*, the opposing writings opined on the question of volition—whether the dog ran across the road because it was trained to come at the owner's behest or because it made its own choice to do so—but the parties had presented no scientific evidence on the subject. Similarly, the parties in the case at bar present no such evidence.

Nonetheless, while dogs may at times make their own choices, several studies suggest that modern domestic dogs have an inherent predisposition to follow human cues (e.g., pointing) and can be trained to obey their commands (e.g., instructing a dog to "come" or "sit") (*see e.g.* Monique A.R. Udell & C.D.L. Wynne, *A Review of Domestic Dogs' (Canis Familiaris) Human-Like Behaviors: Or Why Behavior Analysts Should Stop Worrying and Love Their Dogs*, 89 J Experimental Analysis of Behav 247, 250-251 [2008]). Indeed, dogs have been living with humans for thousands of years, during which time they were selected for and developed those traits (*see* Krisztina Soproni, Ádám Miklósi, József Topál & Vilmos Csányi, *Comprehension of Human Communicative Signs in Pet Dogs (Canis familiaris)*, 115 J Comparative Psych 122 [2001]). This suggests that when a dog responds to its owner's command, it is doing so as a result of instinct, training, and conditioning, not because it has made a conscious choice to do so.

Had the *Doerr* Court been presented with such evidence, perhaps it would have decided (as this Court did in the intermediate appeal) that the *Bard* rule was inapposite because the defendants had control over the dog such that the owner's command caused it to run into the plaintiff's path. However, the *Doerr* majority impliedly rejected that line of reasoning by reversing this Court (*see also* 25 NY3d at 1130-1132 [Abdus-Salaam, J., concurring]).

Therefore, we do not think the Court of Appeals would accept that defendant's actions solely or most proximately caused the injury, even though defendant arguably exerted complete control over the dog (overriding any volition it might have had, when he attached to the dog's leash an unsecured metal bicycle rack that was far lighter in weight than the dog, all but guaranteeing that the dog would wreak havoc wherever it chose to wander).

their negligence cause of action. To avoid the harshness of the *Bard* rule, the recognition of the following exception would be appropriate: A dog owner who attaches his or her dog to an unsecured, dangerous object, allowing the dog to drag the object through the streets and cause injury to others, may be held liable in negligence. In these circumstances, negligence liability would be in keeping with the principles of fundamental fairness, responsibility for one's actions, and societal expectations (*see Doerr*, 25 NY3d at 1148 [Fahey, J., dissenting])—assuming a jury would deem unreasonable defendant's failure to ensure that the rack was secured before he tied his dog to it. It is not unreasonable to expect dog owners to restrain their dogs in public unless unleashing them is safe or specifically permitted at certain times and locations, as evidenced by local leash laws (*see e.g.* 24 RCNY 161.05). However, the Court of Appeals has decided that local leash laws have no bearing on whether liability in negligence ought to attach (*Petrone*, 12 NY3d 546), undermining the declared public policy of those localities that have enacted such laws (*cf. Young v Wyman*, 76 NY2d 1009, 1011 [1990, Kaye, J., dissenting] ["current statement of public policy on the question (whether local law prohibiting owners from letting dogs run 'at large' creates a presumption of negligence) is surely entitled to some recognition by the courts, yet none is given" (citations omitted)]). And although the *Doerr* concurrence reasoned that New Yorkers may expect to find unrestrained dogs in public parks (*see* 25 NY3d at 1129; *but see* 25 NY3d at 1157 [Fahey, J., dissenting]), New Yorkers certainly do not expect to find dogs running on public roads towing large metal objects behind them. A dog owner who, without observing a reasonable standard of care, attaches his or her dog to an object that could foreseeably become weaponized if the dog is able to drag the object through public areas should not be immune from liability when that conduct causes injury.

Moreover, as a matter of public policy, we agree with Judge Fahey's dissent in *Doerr* that New York should join the overwhelming majority of states that follow the Restatement (Second) of Torts § 518 (25 NY3d at 1149, 1157). Under the current rule articulated by the Court of Appeals, it appears that pet owners would be permitted to act in any number of objectively unreasonable ways when supervising their nonvicious pets, because New York law does not place upon them a duty to observe any standard of care (*see Doerr*, 25 NY3d at 1132 [Abdus-Salaam, J., concurring]). The potential for unjust

outcomes is manifest. Although "the Restatement rule . . . . does not treat a domestic pet's untrammeled wanderings as actionable negligence" in all cases (*Doerr*, 25 NY3d at 1137 [Abdus-Salaam, J., concurring], citing Restatement [Second] of Torts § 518, Comment *j*), the Restatement does recognize that "[t]here may . . . be circumstances under which it w[ould] be negligent to permit an animal to run at large, even though it is of a kind that customarily is allowed to do so [e.g., a dog] and under other circumstances there would be no negligence" (Restatement [Second] of Torts § 518, Comment *k*). It seems, however, that under the law of New York at present, permitting a domestic pet that has not displayed vicious propensities to run at large under *any* circumstances—even when doing so would be clearly dangerous—would never give rise to a claim sounding in negligence. We find this to be most unsatisfactory as a matter of public policy and would recognize a cause of action for negligence in appropriate circumstances.

Conclusion

Accordingly, the order of Supreme Court, New York County (Carol R. Edmead, J.), entered April 28, 2016, which granted defendant's motion for summary judgment dismissing the complaint, and denied plaintiffs' cross motion for summary judgment on the issue of liability, should be affirmed, without costs.

RENWICK, MOSKOWITZ, FEINMAN and KAHN, JJ., concur.

Order, Supreme Court, New York County, entered April 28, 2016, affirmed, without costs.